# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANGEL L. OTERO, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BRIAN J. MARTIN, CITY MANAGER, | ) |
| CITY OF LOWELL, | ) |
| EDWARD DAVIS, SUPERINTENDENT, | ) |
| CITY OF LOWELL POLICE DEPARTMENT, | |
| And THE CITY OF LOWELL, | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION NO.

00CV10777 NG

## COMPLAINT AND JURY CLAIM

## INTRODUCTION

Plaintiff Angel L. Otero, Jr. ("Otero") brings this Civil Complaint against the City

Manager, the Superintendent of Police, and the City of Lowell seeking damages and other relief

for injuries resulting from the violations of his federal and state Constitutional rights and from the

intentional and malicious acts of the defendants.

Otero was eligible for promotion to sergeant within the Lowell Police Department since

March of 1997.  Otero, who is Hispanic, would have become the first minority promoted in the

Department.  Otero was unlawfully denied the promotion by the Superintendent of Police based

upon unlawful discrimination.

While Otero's promotion was pending, Otero, and six other police officers with the City

of Lowell, were charged by the City Manager of sexually harassing a female officer on a union

sponsored bus trip in October, 1998.  The City Manager and Superintendent of Police conspired

410503_1/7111-3

1

to bring charges against Otero charging him with Sexual Harassment and related charges even though they knew that there was no factual support to the charges. The Superintendent used this disciplinary action as a pretext for denying Otero the promotion to sergeant. At a hearing before the City Manager on the disciplinary charges, the alleged victim, Vanessa Dixon, admitted under oath, that Otero did not act inappropriate in any way towards her, and there was no other evidence submitted that Otero did anything inappropriate and there was no credible evidence to support any of the multiple charges against Otero.

The lack of evidence against Otero, as well as the other acts of the defendants to deprive Otero of his rights suggests that the defendants prosecuted Otero for reasons other than those advanced by the City at the Administrative level. Otero believes that the action take by the Superintendent was in further of his discriminatory actions and in retaliation for his union activities.

Notwithstanding the complete lack of such evidence, the City Manager suspended Otero for thirty working (30) days, without pay and stripped him of his service revolver, among other disciplinary sanctions. Otero appealed the decision to the Civil Service Commission, which dismissed the action against Otero upon Otero's Motion to Dismiss at the close of the City's case. In addition to being denied the promotion, Otero continues to suffer from the actions of the Superintendent and other defendants despite his complete exoneration by the Civil Service Commission.

## PARTIES

1.   Angel L. Otero, Jr. ("Otero") is an individual who resides in Lowell, Massachusetts. He is employed as a police officer with the City of Lowell.

410503_1/7111-3

2

2.      Brian J. Martin ("City Manager"), is an individual, who at all relevant times served as City Manager for the City of Lowell ("Lowell").  He is sued individually and in his representative capacity.

3.      Edward Davis ("Superintendent") is an individual who at all times relevant served as the Superintendent of Police for Lowell.  He is sued in his representative and individual capacity.

4.      Defendant City of Lowell is a municipal corporation duly organized under the laws of the Commonwealth of Massachusetts.

## ADMINISTRATIVE REMEDIES AND PRESENTMENT

5.      Prior to the institution of this lawsuit, plaintiff filed a timely charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

6.      All conditions precedent to the institution of this lawsuit have been fulfilled, to wit: A timely charge of employment discrimination was filed with the MCAD and EEOC, respectfully; leave to withdraw the MCAD and EEOC complaint was granted; and this complaint has been timely filed.

## FACTS

7.      Otero was hired by the Lowell Police Department in 1989.  He is a member of the I.B.P.O. #382 Local.  Throughout Otero's membership in the union and particularly during his eligibility for promotion, the union has been critical of the Superintendent.

8.      Otero has served the City of Lowell Police Department with honor and distinction.  He has received three awards in the Police Academy with the City of Lowell Police Department.  He has received four commendations, two medals of valor and a citation for

410503_1/7111-3

3

bravery and to acknowledge the excellence of his performance as a police officer.  Until

the incidents described below, he has no disciplinary history with the Department.

9.    He is a veteran of the United States Army.

10.   Otero is the father of two children.  He is a respected member of the Community and

serves as a volunteer in the sports programs in the City of Lowell sports programs, and he

is the President of the Lowell Latin American Softball League.

11.   Many of Otero's extended family members reside in the Lowell area.

12.   Despite his outstanding record and achievement in the department, the Superintendent has

treated Otero differently than the Caucasian officers.  Because he is Hispanic, he has been

treated differently.

13.   In 1997, Otero sought to achieve a promotion to the position of sergeant within the

Department.  As required by the Civil Service Commission ("Commission") and to be

considered for promotion, he took the written Civil Service Examination, which is

administered by the Human Resources Department ("HRD").  The HRD generates a list of

passing candidates by score.  If there is a tie-score, the candidates are listed alphabetically

by the HRD.  This list is used by the appointing authority to select individuals when

considering candidates for promotion.  Upon information and belief, the Superintendent

always chose the candidate alphabetically by name in a tie-score situation.

14.   Otero passed the Civil Service examination and received a score of 84, and was placed on

the certified list of candidates for promotion effective March 6, 1997.  As per the

regulations, this list was effective for two years.  Therefore, he was eligible for promotion

until April of 1999.  Initially, five patrolmen were tied with a score of 84.  The list of

candidates, in alphabetical order, was:

410503_1/7111-3

4

John M. Davis

John P. Dolan

Joseph Murray

Angel L. Otero, Jr.

R. Kelly Richardson

Other then Otero, the other officers are all Caucasian males.

15.     In August, 1997, John M. Davis, who is the brother of Superintendent Davis, and John P.
        Dolan were promoted to the rank of sergeant by Davis. In making these promotions, the
        Superintendent followed the practice and procedure of appointing these officers pursuant
        to the alphabetical order used in a tie-score situation.

16.     Due to the number of sergeant positions to be filled (four), and Otero's spot on the
        promotion list (fourth), he was repeatedly assured that he would be promoted to the rank
        of sergeant. Therefore, he did not retake the next Civil Service Examination because there
        were two sergeant positions to be filled since approximately the end of 1997.

17.     Rather than filling the positions, the Superintendent waited approximately one year to
        appoint the two patrolmen to sergeant.

18.     As a result of the Superintendent's delay, the union instituted an action against the
        Superintendent to force the promotions. As a result of a settlement agreement in August,
        1998, the sergeant vacancies should have been filled immediately following the arbitration.
        The remaining candidates for the two available sergeant positions were Joseph Murray,
        Angel L. Otero, Jr. and R. Kelly Richardson. Based on the custom and practice using the
        alphabetical selection of the appointing authority, Otero was second on the list to be
        appointed. He was also second seniority in the Department between the three candidates.

410503_1/7111-3

19.     Based upon past practice, he should have been promoted to sergeant in the next two
        promotions. He was not. Instead, Otero was subjected to unlawful discrimination by not
        being promoted.

20.     During June and July of 1998, Davis ordered that Otero be placed under surveillance by
        the Department. There was no reason for this surveillance to occur. In his ten years with
        the Department, Otero is unaware of any other police officer that has been placed under
        surveillance by the Superintendent, particularly one who was a candidate for promotion.
        Otero did nothing to be placed under surveillance and did nothing improper while under
        surveillance which would have caused him to be denied the promotion. Yet, when the
        promotions were made, Otero was not promoted. Instead, the two Caucasian officers
        were promoted.

21.     Prior to learning that the other officers were promoted instead of him, a disciplinary action
        was instituted by the Superintendent through the City Manager for Otero's purported
        involvement in an incident which occurred on a union-sponsored bus trip in October of
        1998.

22.     On October 26, 1998, Otero attended a union-sponsored rally for then Acting
        Governor/Candidate Governor Paul Cellucci.

23.     Otero, eight other officers and several corrections officers all traveled from Lowell to
        Boston via a chartered bus. There was one female officer on the bus, Vanessa Dixon.

24.     The bus trip started at 4:00 p.m. and stopped at the Massachusetts State House, Faneuil
        Hall, Anthony's Pier Four for drinks and dinner, and sometime after midnight, J.J. Foley's
        ("Foley's"), a bar in the south end of Boston.

410503_1/7111-3

6

25.    Throughout the events of the day, evening and early morning, Otero maintained a
       respectful and friendly relationship with Dixon, as he had throughout the employment with
       the Police Department.

26.    Dixon admitted to drinking alcohol on the bus and at the stops the group made during the
       bus trip.

27.    When the group left Foley's, Otero was seated in the rear of the bus, on the driver's side.

28.    Otero was present on the bus when a verbal altercation occurred at the front of the bus
       between Dixon and her former boyfriend, John Leary, also a Lowell Police Officer.

29.    The altercation began when Dixon invited a male she met earlier that evening onto the bus.
       The verbal altercation was littered with swears and comments between Leary, Dixon and
       the male passenger.

30.    The verbal altercation occurred at the front end of the bus.

31.    Otero said nothing inappropriate to Dixon.  He did nothing inappropriate to Dixon.

32.    Dixon has admitted that Otero did or said nothing inappropriate.

33.    The bus driver also admitted that she was unaware of anything Otero did or said.  She
       could not attribute any inappropriate statements or behavior to Otero.

34.    The altercation lasted only several minutes.  The male passenger invited by Dixon, left the
       bus within several minutes of boarding it, and Dixon exited the bus several minutes later,
       at the Boston Common.  She did not return to the bus.

35.    An investigation of the trip was undertaken by the Lowell Police Department on order
       from the Superintendent.  Dixon never filed a complaint with the Department about any of
       the events on the bus trip.  Upon information and belief, the Superintendent initiated the

410503_1/7111-3

investigation in an attempt to undermine the union and its support for then Candidate Cellucci.

36.    As part of the investigation, Otero was interrogated twice.

37.    In violation of Police Department policies, Otero was denied counsel during the interrogations.

38.    Otero told the investigators that he was unaware of the dispute between Dixon and Leary. He told them that the bus was loud. As such, he could not tell them what had occurred. He refused to change his answers for the interrogators.

39.    During the interrogation, the investigating officers admitted and revealed to Otero that no-one had told them that Otero had done or said anything inappropriate at any time to Vanessa Dixon or anyone else on the bus that day.

40.    Other passengers on the bus who were seated closer to Dixon and Leary also told the investigators they, too, were unaware of what was going on between Dixon and Leary at the front of the bus.

41.    The investigating officers did not believe that Otero was being truthful when he told them that he was unaware of the events at the front of the bus because of, what they believed, was the volume of the altercation on the bus at the time. However, they believed other witnesses who were seated closer to the altercation as to their lack of knowledge.

42.    The investigating officers recommended that Otero be disciplined for not being truthful regarding his statements that he was unaware of the altercation between Dixon and Leary.

43.    The investigating officers did not recommend that any other charges be brought against Otero.

410503_1/7111-3

44.     The investigating officers submitted their reports of investigation and recommendation of charged to the Superintendent in early December 1998.

45.     No other information was developed concerning Otero by the Superintendent, the City Manager or anyone else associated with the investigation.

46.     In late December, the City Manager and Superintendent met to discuss the charges to be brought against Otero and six other officers. The City Manager and Superintendent knew that there was no evidence to support any charges against Otero. Despite the lack of such evidence, they conspired to bring charges against Otero which they knew had no basis.

47.     On December 28, 1998, despite an acknowledged lack of any evidence to substantiate the charges, Otero was cited by the City Manager, with multiple claims of sexual abuse, sexual harassment, lying and other charges. He was notified that he was to be suspended without pay for six (6) months.

48.     Also, on December 28, 1998, Davis informed the Department that the two Caucasian officers, Murray and Richardson, were promoted to sergeant when he posted the Proposed Sector Assignments. Despite this posting, Otero was led to believe that the promotions had not yet been decided because Otero was notified that he had until January 8, 1999 to sign the certified list to indicate that he would accept the appointment, if chosen. Otero signed on January 7, 1999. Despite this charade, Davis had already decided that he would appoint the Caucasian officers to the position of sergeant.

49.     On January 8, 1999, the Superintendent "officially" promoted the two Caucasian officers, Joseph Murray and R. Kelly Richardson, to the rank of sergeant. Both had the same score as Otero. Otero was denied the promotion.

50.   Otero appealed the charges brought by the City Manager, and a hearing was conducted before Martin.

51.   As a result, Otero was forced to spend funds to defend himself from the charges and to exonerate himself.

52.   From the time when the charges were brought and throughout the hearing, Otero has been the subject of numerous newspaper and television reports and articles which accused him of sexually harassing and abusing a female police officer.

53.   Otero and his family have been humiliated by the adverse publicity to which Otero was wrongfully and maliciously subjected to by the defendants.

54.   Prior to the start of the administrative hearing, City Manager Martin, who was to act as the hearing officer, met privately with Dixon and told Dixon that Otero and the other officers would be punished for their actions.

55.   Prior to the start of the administrative hearing, counsel moved to have Martin recuse himself because he was combining the prosecutional and judicial functions.

56.   Martin denied the Motion without hearing.

57.   Martin was also subpoenaed to testify in the matter.  Martin quashed the subpoena without hearing.

58.   The hearing before Martin occurred in February and March of 1999.

59.   The City called three witnesses to testify and submitted several documents into evidence including the investigative report.

60.   No evidence was introduced that Otero in any way acted or said anything inappropriate toward Vanessa Dixon or anyone else.

61.   Vanessa Dixon admitted at the hearing that Otero did nothing inappropriate.

410503_1/7111-3

62. The bus driver, Julie Gagnon, also admitted that Otero did or said nothing inappropriate during the bus trip.

63. One of the investigating officers, Sergeant David Tousignant, also testified. He admitted that during his entire investigation, which entailed interviews with some twenty-five (25) witnesses, no one stated that Otero did or said anything inappropriate.

64. Tousignant concluded that Otero was not being truthful when he told the investigators that he was unaware of the altercation. However, on cross examination, Tousignant admitted that he believed certain officers from the Billerica House of Corrections, who were seated several rows in front of Otero and closer to the altercation, that they were unaware of the altercation.

65. Prior to the start of the hearing, at the close of the City's evidence, and the close of the case, Otero moved, based upon the complete lack of any evidence against him, that the charges against him be dismissed. Each of his motions was denied by the City Manager. The denial of the motions was arbitrary, capricious, biased and unjustified.

66. On April 8, 1999, Otero received a notice of the Decision of the Appointing Authority. The Decision reduced the suspension against Otero to thirty (30) working days, commencing April 9, 1999. It further compelled Otero to attend classes in diversity awareness, sexual harassment or other similar courses, among other discipline. Otero was ordered to return his service revolver during the suspension.

67. In his Decision, Martin admits that Otero did not affirmatively participate in any sexual harassment of Dixon. Despite a lack of any evidence, Martin disciplined Otero anyway.

68. The Decision and sanctions by Martin were predetermined and not supported by any evidence, were arbitrary, capricious, demonstrated a distinct bias and were unjustified.

410503_1/7111-3

69.    Otero was forced to serve the full thirty-day suspension without pay, to pay for and attend a diversity class, which had to be created specifically to allow him to fulfill the sanctions by the City Manager.

70.    Otero appealed the Decision of April 8, 1999 to the Civil Service Commission.

71.    From the start of the proceeding before the Civil Service Commission ("Commission"), the City of Lowell abused the Civil Service Hearing Process by violating orders of the Commission, filing false motions, presented perjured testimony, hiding evidence, and violating a sequestration order, all to the detriment of Otero.

72.    The procedural abuses by the City of Lowell included the complete disregard of an order that all discovery was to be produced by the City by August 31, 1999.  When the City of Lowell failed to produce such evidence, Otero and counsel for the other officers, were forced to move to compel the production of such documents.

73.    The Commission issued further orders on production of discovery, which were further ignored by the City to Otero's detriment.

74.    Two days before the hearing, the First Assistant City Solicitor filed a "Statement of Disclosure of Newly Discovered Evidence".  In the motion, the First Assistant City Solicitor stated unequivocally that new information had just come to the attention of the City of Lowell, which evidence directly concerned Otero.  The information was not newly discovered.

75.    During the hearing, facts were uncovered which demonstrated that the City of Lowell and the First Assistant City Solicitor were provided this purportedly "newly discovered evidence" as early as August 12, 1999, well within the discovery deadline and months

410503 1/7111-3

before the filing of the motion.  Yet, such information was not revealed until two days

before the start of the hearing under the rubric of "newly discovered evidence".

76. At the start of the hearing, the witnesses were sequestered.  The Motion was allowed,

without objection.

77. Notwithstanding the order, the City of Lowell violated the sequestration order by

conferring with and interrogating witnesses.

78. All of these actions by the City of Lowell caused Otero to incur additional legal expense,

lost time from work and experience additional humiliation and harm.

79. At the conclusion of the City of Lowell's case, counsel for Otero moved that the

Commission dismiss all charges against him.

80. At the end of January 1999, the Commission dismissed each of the charges against Otero

and ordered that Otero be restored to his position without loss of compensation or other

benefits.

81. As of the date of this Complaint, the City has failed to restore Otero to his position

without loss of compensation or other benefits, as ordered by the Commission.

82. The City of Lowell has now appealed the Commissioner's decision to the Superior Court,

and named Otero as a party.  The appeal is frivolous.  The appeal will cause Otero to incur

yet additional attorney's fees, embarrassment and unnecessarily protract this unjustified

and unwarranted attack against him.

83. As a result of the actions of the defendants, Otero has been caused to incur significant

attorneys' fees, lost wages, and lost business opportunities.

84. Otero's livelihood and reputation have been damaged by the unjustified and unwarranted

action of the Superintendent and other defendants.

410503_1/7111-3

85.     Otero has been the subject of repeated publicity accusing him of sexually harassing Dixon
        among other unlawful behavior.  His picture has appeared in the newspapers and on
        television on multiple occasions as a result of the unwarranted and unjustified disciplinary
        action.

86.     In addition to the wrongful disciplinary action and other actions by the Superintendent and
        the City of Lowell, including the denial of the promotion, Otero has been the subject of a
        hostile work environment.

87.     Lowell, which has a population of over one hundred thousand people, has a large minority
        population.  Despite the large number of Hispanics, Asians and African Americans, the
        Lowell Police Department has no minorities appointed to the ranks of superior officers in
        its police department or fire department.

88.     On information and belief, there have never been any African American, Asian or Hispanic
        sergeants or higher-ranking officers within the Lowell Police Department.  All of the
        existing sergeants are Caucasian including the four recently promoted officers.  Of the five
        officers who were tied and eligible for promotion to sergeant, the Superintendent
        appointed the four Caucasian officers, including his brother, and not the Hispanic officer,
        Otero.

89.     Otero has been discriminated against in his employment because of his race, color and
        national origin.

90.     In addition to the denial of the promotion by the Superintendent, the actions of the
        defendants were made in bad faith and with malice.

410503_1/7111-3

14

## COUNT I

### (FIRST AMENDMENT VIOLATIONS)

91.   Otero repeats and restates the allegations contained within paragraphs 1 through 90 of the

Complaint as if fully stated herein.

92.   The actions of the defendants in raising charges and instituting the disciplinary action

against Otero, as described above, acting individually and in concert and conspiracy with

each other, have deprived Otero of his Constitutional rights of free expression and

association as guaranteed by the First Amendment to the United States Constitution.

## COUNT II

### (CIVIL RIGHTS VIOLATIONS)

93.   Otero repeats and restates the allegations contained within paragraphs 1 through 92 of the

Complaint as if fully stated herein.

94.   As a direct result of the intentional, reckless, malicious, and/or grossly negligent acts of

the defendants, separately and in concert and conspiracy with each other and acting under

color of law, Otero was intentionally and unlawfully disciplined and deprived of his rights

guaranteed to him by the First, Fifth and Fourteenth Amendments to the United States

Constitution.

## COUNT III

### (CONSPIRACY TO VIOLATE CIVIL RIGHTS)

95.   Otero repeats and restates the allegations contained within paragraphs 1 through 94 of the

Complaint as if fully stated herein.

96.   As a direct result of the policy, custom and usage developed by the City Manager and

Superintendent and other officials of the City of Lowell, and as exercised by the City

410503_1/7111-3

15

Manager and the Superintendent and in concert and conspiracy with each other, Otero has

been deprived of his rights under the First, Fifth and Fourteenth Amendments to the

United States Constitution.

## COUNT IV

### (EQUAL PROTECTION VIOLATIONS)

97.   Otero repeats and restates the allegations contained within paragraphs 1 through 96 of the

Complaint as if fully stated herein.

98.   As the direct and proximate result of the intentional and/or malicious acts of all of the

defendants, separately and in concert and conspiracy with each other and acting under

color of law, the defendants by their willful abuse of lawful authority vested in them as

public officials have deprived Otero of his right to the full and equal benefit of all laws and

proceedings for the security of persons and property, and the right to not be subject to

unequal punishment, pains and penalties, and his right to due process of law guaranteed by

the Fourteenth Amendment to the United States Constitution.

## COUNT V

### (CIVIL RIGHTS VIOLATIONS)

99.   Otero repeats and restates the allegations contained within paragraphs 1 through 98 of the

Complaint as if fully stated herein.

100.  The City of Lowell, its supervisory officers and officials of the City of Lowell knew or

should have known, and could reasonably foresee, that their supervision of the

Superintendent and City Manager was so inadequate as to make misconduct highly

probable and Constitutional injury likely to occur.

410503_1/7111-3

101.   The policy, custom and usage developed by the City of Lowell officials acting on behalf of the City has directly resulted in Otero being deprived of his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT VI

### (MALICIOUS PROSECUTION AND ABUSE OF PROCESS)

102.   Otero repeats and restates the allegations contained within paragraphs 1 through 101 of the Complaint as if fully stated herein.

103.   As a direct and proximate result of the defendants' intentional, reckless, malicious acts, malicious prosecution and abuse of process, Otero was severely damaged in his person, reputation, prevented from engaging in his usual activities, caused to incur significant expense to defend himself, and caused to induce pain, suffering and severe mental and emotional anguish and other injuries.

## COUNT VII

### (DUE PROCESS VIOLATIONS)

104.   Otero repeats and restates the allegations contained within paragraphs 1 through 103 of the Complaint as if fully stated herein.

105.   By his actions, Martin, in his role as accuser, judge and jury, demonstrated an unfair bias and prejudgment against Otero, denying him a fair hearing before the City of Lowell and which resulted in unfair and unwarranted disciplinary sanctions by him in direct violation of the due process clause of the United States Constitution.

410503_1/7111-3

## COUNT VIII

### (STATE CIVIL RIGHT VIOLATIONS)

106.    Otero repeats and restates the allegations contained within paragraphs 1 through 105 of the Complaint as if fully stated herein.

107.    As a direct and proximate result of the deliberate and intentional acts of the defendants, separately and in concert and conspiracy with each other, violated Otero's rights under Massachusetts General Laws, c. 12, § 11(1) and under the Massachusetts Declaration of Rights, Articles 10, 12 and 16, all to his great detriment.

## COUNT IX

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

108.    Otero repeats and restates the allegations contained within paragraphs 1 through 107 of the Complaint as if fully stated herein.

109.    As a direct and proximate result of the intentional, deliberate and/or reckless acts of the defendants, Otero has suffered great emotional distress.

## COUNT X

### (INTERFERENCE WITH EMPLOYMENT)

110.    Otero repeats and restates the allegations contained within paragraphs 1 through 109 of the Complaint as if fully stated herein.

111.    As a direct result of the intentional and malicious and/or reckless interference with the employment of Otero by the City Manager, Superintendent and the City of Lowell, Otero has been injured in his means of livelihood, has been humiliated, suffered great pain and mental and emotional suffering.

410503_1/7111-3

## COUNT XI

### (INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP)

112.   Otero repeats and restates the allegations contained within paragraphs 1 through 111 of

the Complaint as if fully stated herein.

113.   As a direct and proximate result of the actions of the City Manager and Superintendent,

actions taken without justification, maliciously intending to injure Otero in his business,

Otero lost the benefit of his employment and was otherwise greatly damaged.

## COUNT XII

### (FAILURE TO SUPERVISE)

114.   Otero repeats and restates the allegations contained within paragraphs 1 through 113 of

the Complaint as if fully stated herein.

115.   Defendant City of Lowell and its officials failed to enforce federal and state law and were

negligent in failing to adequately train, supervise and discipline its Superintendent of

Police.

This failure proximately resulted in Otero being deprived of his rights under the First, Fifth

and Fourteenth Amendments to the United States Constitution and the Civil Rights of

Massachusetts.

## COUNT XIII

### (VIOLATIONS OF MASSACHUSETTS G.L. c. 151B)

116.   Otero repeats and restates the allegations contained within paragraphs 1 through 115 of

the Complaint as if fully stated herein.

117.   The Defendants City of Lowell and Superintendent of Police have discriminated against

Otero in violation of G.L. c. 151B.

410503_1/7111-3

## COUNT XIV

### (Equal Rights VIOLATIONS OF MASSACHUSETTS G.L. c. 93, § 102)

118.   Otero repeats and restates the allegations contained within paragraphs 1 through 118 of the Complaint as if fully stated herein.

119.   By their actions, the defendants have violated Otero's rights under M.G.L. c. 93, § 102.

## COUNT XV

### (VIOLATIONS OF BASIC MERIT PRINCIPLES UNDER MASSACHUSETTS G.L. c. 31)

120.   Otero repeats and restates the allegations contained within paragraphs 1 through 119 of the Complaint as if fully stated herein.

121.   By the City of Lowell, the City Manager and the Superintendent's actions, they have violated the Basic Merit Principles as defined within M.G.L. c. 31, §1.

## COUNT XVI

### (Federal Equal Rights VIOLATIONS OF 42 U.S.C. § 1981)

122.   Otero repeats and restates the allegations contained within paragraphs 1 through 121 of the Complaint as if fully stated herein.

123.   By their actions, the defendants have violated Otero's equal rights as defined within 42 U.S.C. §1981.

## COUNT XVII

### (CONSPIRACY TO VIOLATE CIVIL RIGHTS)

124.   Otero repeats and restates the allegations contained within paragraphs 1 through 123 of the Complaint as if fully stated herein.

125.   By their actions, the defendants have conspired to violate Otero's civil rights, in violation of 42 U.S.C. § 1985.

410503_1/7111-3

## COUNT XVIII

### (UNLAWFUL EMPLOYMENT PRACTICES, 42 U.S.C. § 2000e-2)

126.   Otero repeats and restates the allegations contained within paragraphs 1 through 125 of the Complaint as if fully stated herein.

127.   By their actions, the City of Lowell, City Manager and Superintendent of Police have violated Otero's rights under 42 U.S.C. § 2000e-2 by engaging in unlawful employment practices.

## COUNT XIX

### (DEFAMATION)

128.   Otero repeats and restates the allegations contained within paragraphs 1 through 127 of the Complaint as if fully stated herein.

129.   While the administrative process was ongoing, the Superintendent, with malice, defamed Otero to third persons, including but not limited to the officers of the Police Department and the citizens of Lowell, by falsely accusing him of lying, of sexually harassing Dixon and the bus driver and of other false and defamatory statements, all to the great detriment of Otero.


**WHEREFORE**, Angel L. Otero, Jr. moves that the Court enter judgment against the defendants jointly and severally and award him the following relief.

1.   Award Otero compensatory damages in an amount to be determined at trial;

2.   Award Otero punitive damages;

410503_1/7111-3

3.      Otero to be promoted to the position of Sergeant as of the date that any Sergeant

        position was available subsequent to Otero's becoming eligible under the

        Commonwealth of Massachusetts Civil Service rules and regulations;

4.      Declare that Otero did nothing inappropriate during the bus trip and that he should

        not have been the subject to any disciplinary action brought by the City Manager;

5.      Enjoin the defendants from taking any retaliatory actions against him;

6.      Award him his attorneys' fees;

7.      Award him his costs and interest;

8.      Award him any other relief the Court deems appropriate.

### JURY CLAIM

Otero demands a Trial By Jury.

                           Respectfully submitted,

                           **Angel L. Otero, Jr.,**
                           By his attorneys,


                           Vincent L. DiCianni
                           BBO #123430
                           Thomas J. Mango
                           BBO #633249
                           **RUBIN AND RUDMAN LLP**
                           50 Rowes Wharf
                           Boston, MA 02110
                           (617) 330-7000

Dated:  April 21, 2000

410503_1/7111-3

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Angel L. Otero, Jr.          Apr 21  3 30 PM '00

U.S. ...
TH...

**DEFENDANTS**

Brian J. Martin, City Manager, City of Lowell, Edward Davis, Superintendent, City of Lowell Police Department and the City of Lowell

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Middlesex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Vincent L. DiCianni/Thomas J. Mango
Rubin and Rudman LLP
50 Rowes Wharf, Boston, MA 02110    330-7000

ATTORNEYS (IF KNOWN)

Unknown

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                       AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Otero brings this action for violation of his First, Fifth and Fourteenth Amendment Rights, 42 U.S.C. §§1981, 1983, 1985 and 42 U.S.C. §2000e(2)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE  N/A                                     DOCKET NUMBER

DATE   4·21·00                SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)**_____

   Angel L. Otero, Jr. v. Brian J. Martin, City Manager, et al.

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

   ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_  II.   195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720, 730,
              740, 790, 791, 820, 830, 840, 850, 890, 892-894, 895, 950.

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**

   N/A

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**
   No

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?** No

   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? (SEE 28 USC 2403)** _____

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?** No

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)). YES** No **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)). YES** No

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT? YES** No **(a)   IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?** N/A

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?** Boston

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION** N/A **OR WESTERN SECTION** N/A

**(PLEASE TYPE OR PRINT)**  Vincent L. DiCianni
**ATTORNEY'S NAME**_____

**ADDRESS** Rubin and Rudman, LLP, 50 Rowes Wharf, Boston, MA 02110

**TELEPHONE NO.** 617-330-7000

(Category.frm - 09/92)

# RUBIN AND RUDMAN LLP

### COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Vincent L. DiCianni
E-mail: vdicianni@rubinrudman.com

April 21, 2000

*Via Hand Delivery*

Civil Clerk's Office
United States District Court
For the District of Massachusetts
One Courthouse Way
Boston, MA  02210

> RE:   *Angel L. Otero, Jr. v.*
> *City of Lowell, Brian Martin, City Manager;*
> *Edward Davis, Superintendent of Police, and*
> *David Fenton, First Assistant City Solicitor*

Dear Clerk:

Enclosed for filing please find the following:

1.   Civil Action Cover Sheet;

2.   Complaint and Jury Demand; and

3.   Check in the amount of $150.00 for filing fee.

Please acknowledge receipt by date-stamping the enclosed copy of this filing and returning same to the messenger.  Thank you for your assistance.

Very truly yours,

Vincent L. DiCianni

VLD/sad
Encls.

cc:   Mr. Angel L. Otero, Jr.

411914_1/7111-5